## SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement") is entered into among the United States of America, acting through the United States Department of Justice and on behalf of the Office of Inspector General (OIG-HHS) of the Department of Health and Human Services (HHS), and Ted Albin ("Albin") and Grapevine Professional Services, Inc., d/b/a Grapevine Billing and Consulting Services ("Grapevine"), (hereafter collectively referred to as "the Parties"), through their authorized representatives.

## RECITALS

A.      From 2009 until late 2011, Albin and Grapevine served as reimbursement consultants to Arriva Medical, LLC ("Arriva"). Albin wholly owns Grapevine, a company located in Florida.

B.      On May 14, 2019, the United States filed a complaint-in-intervention in the United States District Court for the Middle District of Tennessee captioned *United States ex rel. Goodman v. Arriva Medical, et al*, case number 3:13-cv-0760 (the "Civil Action"). In that complaint, the United States added Albin as a defendant. On August 1, 2019, the United States filed an amended complaint-in-intervention ("Amended Complaint") that added Grapevine as a defendant. The Amended Complaint alleges that Albin and Grapevine caused the submission of Arriva claims to the Medicare program. On August 11, 2021, the Court dismissed co-defendants Arriva and Alere from the suit consistent with the terms of the settlement agreement that the United States, Relator, Arriva and Alere had reached. The case is now styled as *United States v. Albin, et al.*

C.      The United States contends that Albin and Grapevine submitted or caused to be submitted claims for payment to the Medicare Program, Title XVIII of the Social Security Act, 42 U.S.C. §§ 1395-1395lll ("Medicare").

D.     The United States contends that it has certain civil claims against Albin and Grapevine for their conduct alleged the Amended Complaint. That conduct is referred to below as the "Covered Conduct."

E.     This Settlement Agreement is neither an admission of liability by Albin and Grapevine nor a concession by the United States that its claims are not well founded. Albin and Grapevine deny the United States' allegations referenced in Paragraph D.

To avoid the delay, uncertainty, inconvenience, and expense of protracted litigation of the above claims, and in consideration of the mutual promises and obligations of this Settlement Agreement, the Parties agree and covenant as follows:

## TERMS AND CONDITIONS

1.     Albin and Grapevine shall pay to the United States the sum of fifty thousand dollars ($50,000) ("Settlement Amount"), which constitutes restitution to the United States. Within 10 days of the Effective Date of this Agreement, Albin and Grapevine will make a payment to the United States in the amount of $50,000 dollars by electronic funds transfer pursuant to written instructions to be provided by the United States Attorney for the Middle District of Tennessee.

2.     Subject to the exceptions in Paragraph 3 (concerning reserved claims) below, and subject to Paragraph 4 (concerning disclosure of assets) and Paragraph 11 (concerning bankruptcy) below, and upon the United States' receipt of the Settlement Amount, the United States releases Albin and Grapevine from any civil or administrative monetary claim the United States has for the Covered Conduct under the False Claims Act, 31 U.S.C. §§ 3729-3733; the Civil Monetary Penalties Law, 42 U.S.C. § 1320a-7a; the Program Fraud Civil Remedies Act, 31 U.S.C. §§ 3801-3812; or the common law theories of payment by mistake and unjust enrichment.

2

3.      Notwithstanding the release given in Paragraph 2 of this Agreement, or any other term of this Agreement, the following claims and rights of the United States are specifically reserved and are not released:

a.      Any liability arising under Title 26, U.S. Code (Internal Revenue Code);

b.      Any criminal liability;

c.      Except as explicitly stated in this Agreement, any administrative liability or enforcement right, including mandatory or permissive exclusion from Federal health care programs;

d.      Any liability to the United States (or its agencies) for any conduct other than the Covered Conduct;

e.      Any liability based upon obligations created by this Agreement;

f.      Any liability of individuals other than Albin;

g.      Any liability for express or implied warranty claims or other claims for defective or deficient products or services, including quality of goods and services;

h.      Any liability for failure to deliver goods or services due; and

i.      Any liability for personal injury or property damage or for other consequential damages arising from the Covered Conduct.

4.      Albin and Grapevine have provided sworn financial disclosures and supporting documents (together "Financial Disclosures") to the United States and the United States has relied on the accuracy and completeness of those Financial Disclosures in reaching this Agreement. Albin and Grapevine warrant that the Financial Disclosures are complete, accurate, and materially current as of the Effective Date of this Agreement. If the United States learns of material asset(s) in which Albin and/or Grapevine had an interest of any kind as of the Effective Date of this

Agreement (including, but not limited to, promises by insurers or other third parties to satisfy Albin's and/or Grapevine's obligations under this Agreement) that were not disclosed in the Financial Disclosures, or if the United States learns of any false statement or misrepresentation by Albin and/or Grapevine on, or in connection with, the Financial Disclosures, and if such nondisclosure, false statement, or misrepresentation changes the estimated net worth set forth in the Financial Disclosures by $2,500 or more, the United States may at its option: (a) rescind this Agreement and reinstate its suit or file suit based on the Covered Conduct or (b) collect the full Settlement Amount in accordance with the Agreement plus one hundred percent (100%) of the net value of Albin's and/or Grapevine's previously undisclosed assets. Albin and Grapevine agree not to contest any collection action undertaken by the United States pursuant to this provision, and agree that they will immediately pay the United States the greater of (i) a ten-percent (10%) surcharge of the amount collected in the collection action, as allowed by 28 U.S.C. § 3011(a), or (ii) the United States' reasonable attorneys' fees and expenses incurred in such an action. In the event that the United States, pursuant to this paragraph rescinds this Agreement, Albin and Grapevine waive and agree not to plead, argue, or otherwise raise any defenses under the theories of statute of limitations, laches, estoppel, or similar theories, to any civil or administrative claims that (a) are filed by the United States within 120 calendar days of written notification to Albin and Grapevine that this Agreement has been rescinded, and (b) relate to the Covered Conduct, except to the extent these defenses were available on May 14, 2019 for Albin and August 1, 2019 for Grapevine.

5.      Albin and Grapevine waive and shall not assert any defenses Albin and Grapevine may have to any criminal prosecution or administrative action relating to the Covered Conduct that may be based in whole or in part on a contention that, under the Double Jeopardy Clause in the Fifth Amendment of the Constitution, or under the Excessive Fines Clause in the Eighth

4

Amendment of the Constitution, this Agreement bars a remedy sought in such criminal prosecution or administrative action.

6.      Albin and Grapevine fully and finally release the United States, its agencies, officers, agents, employees, and servants, from any claims (including attorney's fees, costs, and expenses of every kind and however denominated) that Albin and Grapevine have asserted, could have asserted, or may assert in the future against the United States, and its agencies, officers, agents, employees, and servants related to the Covered Conduct and the United States' investigation and prosecution thereof.

7.      The Settlement Amount shall not be decreased as a result of the denial of claims for payment now being withheld from payment by any Medicare contractor (e.g., Medicare Administrative Contractor, fiscal intermediary, carrier) or any state payer, related to the Covered Conduct; and Albin and Grapevine agree not to resubmit to any Medicare contractor or any state payer any previously denied claims related to the Covered Conduct, agrees not to appeal any such denials of claims, and agrees to withdraw any such pending appeals.

8.      Albin and Grapevine agree to the following:

a.      Unallowable Costs Defined:      All costs (as defined in the Federal Acquisition Regulation, 48 C.F.R. § 31.205-47; and in Titles XVIII and XIX of the Social Security Act, 42 U.S.C. §§ 1395-1395lll and 1396-1396w-5; and the regulations and official program directives promulgated thereunder) incurred by or on behalf of Albin or Grapevine, its present or former officers, directors, employees, shareholders, and agents in connection with:

(1)      the matters covered by this Agreement;

(2)      the United States' audit(s) and civil investigation(s) of the matters covered by this Agreement;

5

(3) Albin's and Grapevine's investigation, defense, and corrective actions undertaken in response to the United States' audit(s) and civil investigation(s) in connection with the matters covered by this Agreement (including attorneys' fees);

(4) the negotiation and performance of this Agreement; and

(5) the payment that Albin and Grapevine make to the United States pursuant to this Agreement;

are unallowable costs for government contracting purposes and under the Medicare Program, Medicaid Program, TRICARE Program, and Federal Employees Health Benefits Program (FEHBP) (hereinafter referred to as Unallowable Costs).

b.      Future Treatment of Unallowable Costs:   Unallowable Costs shall be separately determined and accounted for by Albin and Grapevine, and Albin and Grapevine shall not charge such Unallowable Costs directly or indirectly to any contracts with the United States or any State Medicaid program, or seek payment for such Unallowable Costs through any cost report, cost statement, information statement, or payment request submitted by Albin, Grapevine, or any of its subsidiaries or affiliates to the Medicare, Medicaid, TRICARE, or FEHBP Programs.

c.      Treatment of Unallowable Costs Previously Submitted for Payment: Albin and Grapevine further agree that within 90 days of the Effective Date of this Agreement it shall identify to applicable Medicare and TRICARE fiscal intermediaries, carriers, and/or contractors, and Medicaid and FEHBP fiscal agents, any Unallowable Costs (as defined in this Paragraph) included in payments previously sought from the United States, or any State Medicaid program, including, but not limited to, payments sought in any cost reports, cost statements, information reports, or payment requests already submitted by Albin, Grapevine, or any of its subsidiaries or affiliates, and shall request, and agree, that such cost reports, cost statements, information reports,

6

or payment requests, even if already settled, be adjusted to account for the effect of the inclusion of the unallowable costs. Albin and Grapevine agree that the United States, at a minimum, shall be entitled to recoup from Albin and Grapevine any overpayment plus applicable interest and penalties as a result of the inclusion of such Unallowable Costs on previously-submitted cost reports, information reports, cost statements, or requests for payment.

Any payments due after the adjustments have been made shall be paid to the United States pursuant to the direction of the Department of Justice and/or the affected agencies. The United States reserves its rights to disagree with any calculations submitted by Albin, Grapevine, or any of its subsidiaries or affiliates on the effect of inclusion of Unallowable Costs (as defined in this paragraph) on Albin, Grapevine, or any of its subsidiaries or affiliates' cost reports, cost statements, or information reports.

          d.      Nothing in this Agreement shall constitute a waiver of the rights of the United States to audit, examine, or re-examine Albin's or Grapevine's books and records to determine that no Unallowable Costs have been claimed in accordance with the provisions of this paragraph.

9.      This Agreement is intended to be for the benefit of the Parties only. The Parties do not release any claims against any other person or entity, except to the extent provided for in Paragraph 10 (waiver for beneficiaries paragraph), below.

10.      Albin and Grapevine agree that they waive and shall not seek payment for any of the health care billings covered by this Agreement from any health care beneficiaries or their parents, sponsors, legally responsible individuals, or third party payors based upon the claims defined as Covered Conduct.

11.      In exchange for valuable consideration provided in this Agreement, Albin and Grapevine acknowledge the following:

a.    Albin and Grapevine have reviewed their financial situations and warrant that they are each solvent within the meaning of 11 U.S.C. §§ 547(b)(3) and 548(a)(1)(B)(ii)(I) and shall remain solvent following payment to the United States of the Settlement Amount.

b.    In evaluating whether to execute this Agreement, the Parties intend that the mutual promises, covenants, and obligations set forth herein constitute a contemporaneous exchange for new value given to Albin and Grapevine, within the meaning of 11 U.S.C. § 547(c)(1), and the Parties conclude that these mutual promises, covenants, and obligations do, in fact, constitute such a contemporaneous exchange.

c.    The mutual promises, covenants, and obligations set forth herein are intended by the Parties to, and do in fact, constitute a reasonably equivalent exchange of value.

d.    The Parties do not intend to hinder, delay, or defraud any entity to which Albin and/or Grapevine was or became indebted to on or after the date of any transfer contemplated in this Agreement, within the meaning of 11 U.S.C. § 548(a)(1).

e.    If Albin's and Grapevine's obligations under this Agreement are avoided for any reason (including but not limited to, through the exercise of a trustee's avoidance powers under the Bankruptcy Code) or if, before the Settlement Amount is paid in full, Albin, Grapevine, or a third party commences a case, proceeding, or other action under any law relating to bankruptcy, insolvency, reorganization, or relief of debtors seeking any order for relief of Albin's and Grapevine's debts, or to adjudicate Albin or Grapevine as bankrupt or insolvent; or seeking appointment of a receiver, trustee, custodian, or other similar official for Albin and Grapevine or for all or any substantial part of Albin's and Grapevine's assets:

(i) the United States may rescind the releases in this Agreement and bring any civil and/or administrative claim, action, or proceeding against Albin and Grapevine for the claims that would otherwise be covered by the releases provided in Paragraph 2 above; and

8

(ii) the United States has an undisputed, noncontingent, and liquidated allowed claim against Albin and Grapevine in the amount of $19,846,408, less any payments received pursuant to Paragraph 1 of this Agreement, provided, however, that such payments are not otherwise avoided and recovered from the United States by Albin and Grapevine, a receiver, trustee, custodian, or other similar official for Albin and Grapevine.

f.      Albin and Grapevine agree that any civil and/or administrative claim, action, or proceeding brought by the United States under Paragraph 11.e is not subject to an "automatic stay" pursuant to 11 U.S.C. § 362(a) because it would be an exercise of the United States' police and regulatory power. Albin and Grapevine shall not argue or otherwise contend that the United States' claim, action, or proceeding is subject to an automatic stay and, to the extent necessary, consents to relief from the automatic stay for cause under 11 U.S.C. § 362(d)(1). Albin and Grapevine waive and shall not plead, argue, or otherwise raise any defenses under the theories of statute of limitations, laches, estoppel, or similar theories, to any such civil or administrative claim, action, or proceeding brought by the United States within 120 days of written notification to Albin and Grapevine that the releases have been rescinded pursuant to this paragraph, except to the extent such defenses were available on May 14, 2019 for Albin and August 1, 2019 for Grapevine.

12.      Upon receipt of the payment described in Paragraph 1, above, the Parties shall promptly sign and file in the Civil Action a Joint Stipulation of Dismissal of the Civil Action pursuant to Rule 41(a)(1).

13.      Each Party shall bear its own legal and other costs incurred in connection with this matter, including the preparation and performance of this Agreement.

14.      Each Party and signatory to this Agreement represents that it freely and voluntarily enters into this Agreement without any degree of duress or compulsion.

9

15.     This Agreement is governed by the laws of the United States. The exclusive venue for any dispute relating to this Agreement is the United States District Court for the Middle District of Tennessee. For purposes of construing this Agreement, this Agreement shall be deemed to have been drafted by all Parties to this Agreement and shall not, therefore, be construed against any Party for that reason in any subsequent dispute.

16.     This Agreement constitutes the complete agreement between the Parties. This Agreement may not be amended except by written consent of the Parties. Forbearance by the United States from pursuing any remedy or relief available to it under this Agreement shall not constitute a waiver of rights under this Agreement.

17.     The undersigned counsel represent and warrant that they are fully authorized to execute this Agreement on behalf of the persons and entities indicated below.

18.     This Agreement may be executed in counterparts, each of which constitutes an original and all of which constitute one and the same Agreement.

19.     This Agreement is binding on Albin's and Grapevine's successors, transferees, heirs, and assigns.

20.     All Parties consent to the disclosure of this Agreement, and information about this Agreement, to the public.

21.     This Agreement is effective on the date of signature of the last signatory to the Agreement (Effective Date of this Agreement). Facsimiles and electronic transmissions of signatures shall constitute acceptable, binding signatures for purposes of this Agreement.

THE UNITED STATES OF AMERICA

DATED: 2/9/2022    BY: _____

JAKE M. SHIELDS
Trial Attorney
Commercial Litigation Branch

10

Civil Division, Fraud Section
United States Department of Justice


DATED: 2|14|22       BY: _____
                          ELLEN BOWDEN MCINTYRE
                          Assistant United States Attorney
                          United States Attorney's Office for the
                          Middle District of Tennessee


DATED: 02|10|2022 BY: _____
                          LISA M. RE
                          Assistant Inspector General for Legal Affairs
                          Office of Counsel to the Inspector General
                          Office of Inspector General
                          United States Department of Health and Human Services


### ALBIN AND GRAPEVINE - DEFENDANTS


DATED: 2|4|2022      BY: _____
                          Ted Albin on behalf of himself personally


DATED: 2|4|2022      BY: _____
                          Ted Albin on behalf of Grapevine


DATED: 2/8/22        BY: _____
                          Ty Howard
                          Charles F. Spainhour
                          Counsel for Albin and Grapevine